IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Loretta H. Able,<br><br>              Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>              Defendant. | Civil Action No. 6:06-2975-RBH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on November 21, 2003, alleging that she became unable to work on April 29, 2003. The application was denied initially and on reconsideration by the Social Security Administration. On January 18, 2005, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney and a vocational expert appeared on January 26,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2006, considered the case *de novo*, and on March 20, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on August 28, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)   The claimant's asthma, arthritis, obesity and diabetes mellitus are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> (4)  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)  The claimant's allegations concerning impairments/ disability and the ability to work are not substantiated by the total evidence of record and not credible.
>
> (6)  The claimant has the following residual functional capacity: no lifting or carrying over 10 pounds; no standing and/or walking over two hours in an eight-hour workday; only occasional stooping, twisting, crouching or kneeling; no crawling, balancing or climbing; no foot pedals or other controls with the right lower extremity; avoidance of hazards such as unprotected heights and dangerous machinery; and an environment free from poor ventilation, dust, fumes, gases, odors, and extremes of humidity and temperature.
>
> (7)  The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).
>
> (8)  The claimant is an "individual closely approaching advanced age" (20 CFR § 404.1563).

2

> (9) The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).
>
> (10) The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).
>
> (11) The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).
>
> (12) Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform as listed in the body of the decision.
>
> (13) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of

3

five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 54 years old at the time of the ALJ's decision. She has a high school education with additional vocational training (Tr. 284) and past relevant work experience as an insurance agent and substitute teacher (Tr. 65).

The record reveals that the plaintiff first presented to Dr. Catherine Schaefer on June 10, 2002, with complaints of asthma and high blood pressure. Dr. Schaefer noted that the plaintiff's blood pressure was 140/90, her weight was 290 pounds, and her asthma seemed controlled. Examination revealed regular heart rate and rhythm, normal gait, intact sensation, and full range of motion and good stability of her extremities (Tr. 192-98).

On March 31, 2003, the plaintiff presented to Dr. Schaefer with complaints of right knee pain. The plaintiff's blood pressure was 122/80 and her weight was 302 pounds. Dr. Schaefer prescribed knee exercises and recommended that the plaintiff return in two weeks for a follow-up appointment (Tr. 187).

X-rays of the plaintiff's right knee on April 7, 2003, demonstrated some very mild spurring of the patella and no evidence of acute fracture or dislocation (Tr. 201).

On April 17, 2003, the plaintiff was referred to Dr. Kevin Nahigian, an orthopaedic surgeon, for an evaluation of her right knee. Examination revealed medial and lateral joint line discomfort, and x-rays demonstrated no abnormal bony alignment or signs of advanced degenerative changes. Dr. Nahigian believed that the plaintiff had meniscal pathology and recommended a corticosteroid injection, which she declined (Tr. 223). On May 1, 2003, the plaintiff returned to Dr. Nahigian and underwent a corticosteroid injection for pain relief (Tr. 222).

At a follow-up appointment with Dr. Schaefer on May 5, 2003, the plaintiff complained of knee pain. She was prescribed a knee brace and referred to physical therapy (Tr. 185).

Physical therapy records from May 5 to May 21, 2003, indicated improvement in the range of motion and stability of the plaintiff's right patella (Tr. 93-100).

The plaintiff had a follow-up appointment with Dr. Schaefer on May 23, 2003. Examination revealed full range of motion of the extremities and swelling and crepitus of her right knee (Tr. 184). Dr. Schaefer also completed a form for the plaintiff's disability insurance company. She indicated that the plaintiff was permanently disabled because of her knee problem; that the plaintiff would be undergoing surgery; and that she expected a fundamental or marked change in the plaintiff's condition in the future (Tr. 236-38).

On June 18, 2003, the plaintiff underwent right knee arthroscopic surgery (Tr. 105-06). At a follow-up appointment with Dr. Nahigian on July 1, 2003, the plaintiff had no new complaints. Dr. Nahigian noted that the plaintiff's surgical incision was healing with no infection and referred the plaintiff to physical therapy (Tr. 221).

Physical therapy notes reflect an improvement in the range of motion of the plaintiff's right knee (Tr. 137-75).

On July 17, 2003, Dr. Nahigian completed a form for the plaintiff's insurance carrier. He opined that the plaintiff was disabled at that time due to recent surgery, swelling and pain; that he expected a fundamental or marked change in her condition; and that she would be a suitable candidate for rehabilitation services (Tr. 256-58).

On August 5, 2003, Dr. Nahigian noted a 20-30 percent improvement in the plaintiff's condition since her last appointment (Tr. 220).

On August 29, 2003, Dr. Nahigian completed a form for the plaintiff's insurance carrier. He noted that the plaintiff was ambulatory and had improved; she was disabled at that time due to pain and swelling; and she was a suitable candidate for further rehabilitation services (Tr. 252-54).

At a follow-up appointment with Dr. Nahigian on September 2, 2003, he noted that the plaintiff had remarkably improved for a two-week period of time after a corticosteroid injection. Examination revealed no erythema or increased warmth, and range of motion was limited only by the plaintiff's intra-articular effusion. He also noted that the plaintiff should be kept on a "sit-down restrictive job" (Tr. 219-20).

On August 6, 2003, Dr. Schaefer completed a form for the plaintiff's insurance carrier and indicated that the plaintiff was permanently disabled due to degenerative joint disease, torn ligament and asthma (Tr. 85).

On September 29, 2003, the plaintiff presented to Dr. Schaefer with complaints of shortness of breath and wheezing. Her blood pressure was 120/74, her heart rate and rhythm were regular, and x-rays revealed no evidence of acute cardiopulmonary disease. She was prescribed a nebulizer (Tr. 182, 199).

On October 13, 2003, Dr. Nahigian completed a "Continuing Disability Claim Form" for the plaintiff's insurance carrier. He reported that the plaintiff's prognosis was good and expected significant improvement in her condition in 3-4 months. He also noted that the plaintiff was not permanently disabled (Tr. 89).

7

On November 3, 2003, Dr. Nahigian completed another form for the plaintiff's insurance carrier. He noted that the plaintiff was able to resume sit-down work on September 2, 2003; her condition had improved; she had moderate limitation of functional capacity and was capable of sedentary activity; and that she was not totally disabled for any occupation (Tr. 243-46).

At a follow-up appointment with Dr. Nahigian on December 2, 2003, the plaintiff reported that she had primarily ambulatory pain, but decreased swelling. Examination revealed that she had full range of motion of the knee. Testing for rheumatoid arthritis was negative (Tr. 202, 218-19).

Examination by Dr. Schaefer on December 9, 2003, revealed that the plaintiff's blood pressure was 128/86, gait was normal, muscle tone was normal, and she had no edema or atrophy of the extremities (Tr. 180).

At a follow-up appointment with Dr. Nahigian on December 23, 2003, the plaintiff reported that her pain was not as bad and that she was improved. Examination revealed that the plaintiff's knee range of motion was improving and her quadriceps strength improved. Dr. Nahigian noted that the plaintiff had improved considerably and that she could increase her level of activities as tolerated (Tr. 218).

On February 8, 2004, Dr. Nahigian completed a "Continuing Disability Claim" form for the plaintiff's insurance carrier. He indicated that the plaintiff's prognosis was good; that he expected significant improvement in her condition in 1-2 months; and that she was not permanently disabled (Tr. 88).

On February 18, 2004, Dr. James Weston, a State agency medical consultant, reviewed the plaintiff's records at the request of the Commissioner and completed a Physical Residual Capacity Assessment. Dr. Weston determined that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (Tr. 228-35).

On February 19, 2004, Dr. Nahigian completed a form for the plaintiff's insurance carrier. He indicated that the plaintiff's condition was unchanged and that Plaintiff was totally disabled from her regular occupation (Tr. 240-42).

On April 2, 2004, Dr. Nahigian completed another form for the plaintiff's insurance carrier. He indicated that the plaintiff had persistent right knee pain; she had been referred to a rheumatologist; and that she was not permanently disabled (Tr. 87).

On April 26, 2005, Dr. Schaefer completed a form for the plaintiff's insurance carrier. She indicated that the plaintiff was permanently disabled due to diabetes, hypertension, and degenerative joint disease (Tr. 86).

At the hearing, the plaintiff testified that she quit work because she was having a lot of problems with her knees (Tr. 295). She testified that she had surgery in June 2003 and that her condition had not improved after surgery and physical therapy (Tr. 306). She testified that she had a lot of knee pain and that she did not take any prescription pain medicine, only over-the-counter Tylenol (Tr. 296, 300). The plaintiff initially testified that "[my] knee hurts when I sit down a whole lot, and it hurts when I stand" (Tr. 299). However, she later testified that she spent most of the day sitting, trying to stand and reading (Tr. 310).

Vocational expert William Stewart testified that the plaintiff's past relevant work was classified as semi-skilled light work and that she had transferable skills (Tr. 312, 314). In response to a hypothetical question, he testified that a person of the plaintiff's age, education, and residual functional capacity could perform a number of jobs that exist in the national economy in significant numbers, including a number of different clerical jobs of which more than 20,000 jobs exist in South Carolina (Tr. 314).

## **ANALYSIS**

The plaintiff alleges disability commencing April 29, 2003, due to asthma, sleep disorder, arthritis with edema, obesity, diabetes, right knee ligament damage and instability, and hypertension.  The ALJ found that the plaintiff had the residual functional capacity to perform a significant range of sedentary work.

The plaintiff argues that the ALJ erred by failing to properly consider the opinions of her treating physicians.  The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case.  *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors:  (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  20 C.F.R. §404.1527(d)(2)-(5).  Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

Dr. Catherine Schaefer, who treated the plaintiff beginning in June 2002, opined on May 23, 2003, that the plaintiff was totally disabled from any occupation based on the severity of her multiple impairments. Dr. Schaefer indicated that she expected the plaintiff's situation to change after surgery (Tr. 236-38). The surgery was performed on June 18, 2003, by orthopaedic surgeon Dr. Kevin Nahigian. In his statement, dated July 17, 2003, Dr. Nahigian stated that the plaintiff was incapable of sedentary activity. He further noted that she was disabled as she was still having swelling and pain since her surgery. While he expected a change in the future, he did not know when she would recover sufficiently to perform a job (Tr. 256-58). On August 6, 2003, Dr. Schaefer again opined that the plaintiff was permanently disabled since May 1, 2003, and she noted the plaintiff's restrictions included bending and prolonged standing or sitting (Tr. 84-85). On August 29, 2003, Dr. Nahigian stated that the plaintiff was still disabled from sedentary work, and her prognosis for the future was unknown (Tr. 253-54). On October 13, 2003, Dr. Nahigian stated that the plaintiff was not permanently disabled, and he expected improvement in three to four months. He stated the plaintiff would be out of work until December 2, 2003 (Tr. 89). On November 3, 2003, Dr. Nahigian stated that the plaintiff had a moderate limitation of functional capacity and was capable of sedentary activity at that time (Tr. 244-46). He stated the plaintiff had been taking Celebrex and participating in a home therapy

program. However, on November 10, 2003, he again stated that she was incapable of performing sedentary activity, noting that the plaintiff's knee pain and swelling continued (Tr. 248-50). On February 8, 2004, Dr. Nahigian stated that the plaintiff was not permanently disabled, and he expected significant improvement in her condition in one or two months (Tr. 88). On February 19, 2004, he again stated that the plaintiff was incapable of sedentary activity and noted that she was awaiting a consultation with a rheumatologist (Tr. 239-42). On April 2, 2004, Dr. Nahigian stated that the plaintiff was not permanently disabled, but she could not work at that time due to persistent right knee pain (Tr. 87). On April 26, 2005, Dr. Schaefer stated that the plaintiff was permanently disabled and that her prognosis was poor (Tr. 86). Lastly, in an opinion dated August 7, 2006, which was submitted to the Appeals Council prior to its decision, Dr. Schaefer stated that the plaintiff was disabled from any occupation. She further stated that the plaintiff had surgery, but her condition had not changed since her initial complaint. Dr. Schaefer noted that she had seen the plaintiff approximately every three months since February 2003 (Tr. 12-15).

        The ALJ concluded that Dr. Schaefer's opinion was only entitled to "slight weight" because she "was describing a temporary period with an expectation of improvement in the claimant's condition after knee surgery" (Tr. 26). The ALJ found that "[a]lthough the evidence shows that the claimant was incapable of sustained work activities at the time of her alleged onset, and shortly after her June 2003 right knee surgery, the record does not show that this incapacity lasted for 12 months, as required under the Social Security Act" (Tr. 26). The ALJ found that Dr. Nahigian's notes supported the conclusion that the plaintiff was not able to work from July 2003 until September 2003. Accordingly, the ALJ gave "controlling weight to Dr. Nahigian's conclusion that for a brief period of time of about two months the claimant was unable to work, but then in September 2003 became capable of sedentary work activities. However, I give no weight to his conclusion in the insurance form in February 2004 that the claimant became unable to sustain even

sedentary work" (Tr. 27).  The ALJ stated that Dr. Nahigian's treatment notes from the plaintiff's last visit in December 2003 showed continued improvement, and he released the plaintiff from his care at that time (Tr. 218).  However, it is clear that the plaintiff continued to visit Dr. Nahigian on an as-needed basis, and he examined the plaintiff on February 10, 2004, a week before he opined that she was unable to do even sedentary work.  He also stated that the plaintiff's prognosis for the future at that time was unknown (Tr. 239-42).

As argued by the plaintiff, the ALJ did not properly consider the opinions of her treating physicians.  Between May 2003 and August 2006, the plaintiff's two treating physicians opined on numerous occasions that the plaintiff was incapable of even sedentary work based upon her knee pain and swelling.  In making his findings, the ALJ does not even reference the later opinions of Dr. Schaefer, dated August 6, 2003, and April 26, 2005.  A finding that the opinion of a treating physician is not well supported by medical evidence and thus is not entitled to controlling weight does not mean that the opinion should be rejected.  The ALJ still must consider the weight to be given to the physician's opinion by applying the five factors discussed above.  In this case, Dr. Schaefer, the plaintiff's treating physician for over four years, opined on numerous occasions over a three-year period that the plaintiff's impairments prevented her from doing even sedentary work.  Dr. Nahigian, an orthopaedic surgeon, came to the same conclusion on several occasions over the three-year period based upon the plaintiff's knee impairment.  However, on a couple of occasions, he opined that the plaintiff could perform sedentary work, supporting the ALJ's findings.  As the ALJ found that the plaintiff was incapable of even sedentary work between July and September 2003, the opinions of the treating physicians as to the plaintiff's continued disability after that time period is extremely important.  Accordingly, upon remand, the ALJ should be instructed to evaluate the opinions of the plaintiff's treating physicians in accordance with the above-cited law.  If the ALJ finds that the opinions are not entitled to controlling weight, he should still consider the weight to be

given to the physician's opinion by applying the factors cited above. Further, as Dr. Nahigian's opinions appear to be somewhat contradictory, upon remand, the ALJ should seek additional evidence or clarification from this medical source. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

August 21, 2007

Greenville, South Carolina